UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL RIBIS,

                              Plaintiff,

                                                            DECISION AND ORDER

                                                            03-CV-6489L

             v.

MIKE BARNARD CHEVROLET-CADILLAC, INC.,


                              Defendant.
_____


        Plaintiff, Crystal Ribis, commenced this action under Title VII of the Civil Rights Act of

1964 ("Title VII"), against her former employer, Mike Barnard Chevrolet-Cadillac, Inc. ("Barnard").

Plaintiff alleges that during her employment, she was subjected to sexual harassment and a hostile

work environment, and that she was constructively discharged on account of her sex.  Both sides

have moved for summary judgment.


                              **BACKGROUND**

        Barnard is an automobile dealership in Newark, New York.  Plaintiff began working for

Barnard in September 1999 as a customer "greeter."[1]

_____

        [1]Although the complaint alleges that plaintiff began her employment in September 1998,
*see* Complaint ¶ 4, plaintiff admitted at her deposition that this was an error and that the correct
date was September 1999.  *See* Dkt. # 24-3 at 5.

Plaintiff alleges that virtually from the beginning of her employment at Barnard, she was subjected to a hostile work environment.  While the complaint and plaintiff's motion papers go into some detail concerning the nature of that environment, the gist of plaintiff's claim is that the atmosphere at Barnard was permeated by sex.  Other employees frequently and explicitly spoke, to each other and to plaintiff, about sexual subjects, including sexual comments about female customers and employees, "dirty" jokes, and the details of their own sex lives.  Pornography was also often visible on employees' computer screens.

Some of this behavior was directed at plaintiff.  In particular, salesperson Rod Faro, in addition to making crude comments to plaintiff about the physical attributes of female customers, asked plaintiff–who Faro knew was married–to go out on a date with him, an invitation which plaintiff declined.  Faro also had a habit of touching female employees, and would walk up behind plaintiff and begin rubbing her shoulders and back, despite her repeated demands that he stop.

Pat Riley, who became Sales Manager in 2001, engaged in similar behavior.  He would frequently talk explicitly about sex, both in general as well as in specific terms aimed directly at plaintiff.  On various occasions, for example, Riley allegedly told plaintiff that he could "grab [her hair] from the back and give it to [her] from the front," that he could "bend [her] over this car and give it to you from behind," that "[i]f [plaintiff] were [his] wife, [her] legs would always be wrapped around [him]," and that plaintiff was "in a bad mood because [her] husband [did]n't give it to [her] right."  Plaintiff's Rule 56.1 Statement (Dkt. #29-1) ¶ 94.  Riley also made unwelcome physical contact with plaintiff, including touching her shoulders while she was sitting at her desk and rubbing his body against her backside.  *Id.* ¶¶ 95, 109.

Another alleged contributor to the sexual focus of plaintiff's workplace was Diane Barnard Ledbetter, the daughter of owner Mike Barnard.  Ledbetter worked as a salesperson during plaintiff's employment at Barnard.  Although Ledbetter is not alleged to have directed any sexual comments at plaintiff, plaintiff alleges that Ledbetter frequently spoke openly about sex, including her own sexual behavior and desires, in explicit, crude terms.  Ledbetter is also alleged on several occasions to have exposed her breasts (with her bra on) to male employees, such as by pressing her breasts up against the showroom window when male employees were standing outside.  *Id.* ¶¶ 55-60, 127-39.

Plaintiff alleges that she complained about these matters both to the employees involved and to her supervisors, but to no avail.  Pursuant to Barnard's sexual-harassment policy, which was set forth in Barnard's employee handbook, *see* Plaintiff's Ex. R, plaintiff allegedly complained to various managers at Barnard, as well as to Mike Barnard, but they did nothing to stop the offensive behavior.  Sometimes they would tell her that they would take care of the problem, but nothing would be done.  At other times, according to plaintiff, she was positively discouraged from making such complaints.  Aside from the fact that some of the managers themselves engaged in such behavior, on one occasion plaintiff complained to General Manager Frank Moscato about comments that Sales Manager Tom Carpenter had been making about plaintiff's breasts.  Moscato allegedly replied that plaintiff should "cut [Moscato] some slack," adding, "I'm not here to deal with all this." Dkt. #29-1 ¶ 171.

By the end of 2001, plaintiff had decided to quit her job at Barnard due to the constant sexual harassment.  She "was convinced to stay," however, when Moscato offered her a pay raise, and promised plaintiff that she would be made a salesperson and that Riley would be fired.  *Id.* ¶ 154;

Plaintiff's Deposition (Dkt. #44 Ex. S) at 74.  Plaintiff was given a sales position in early 2002, and Riley was transferred that year to a different office.  *Id.* ¶¶ 156, 158.  Riley was replaced as Sales Manager by Tom Carpenter, but he also made frequent, crude sexual comments to plaintiff directly or in her presence.

Plaintiff again decided to leave Barnard and began looking for another job.  When she was offered a job at a nearby dealership, Piehler Motors ("Piehler"), plaintiff accepted, but after she told Carpenter that she was leaving Barnard to take a job at Piehler, the offer from Piehler was "mysteriously withdrawn."  *Id.* ¶ 175.

Plaintiff filed this action on October 7, 2003.  The complaint asserts three causes of action. The first alleges a claim under Title VII and the New York State Human Rights Law, Exec. L. § 296, based on plaintiff's allegation that she was subjected to a hostile work environment at Barnard.  The second and third causes of action allege claims under New York law for intentional infliction of emotional distress and negligent supervision respectively.  Plaintiff seeks compensatory and punitive damages and attorney's fees.

**DISCUSSION**

**I. Summary Judgment in Discrimination Cases**

When deciding a motion for summary judgment, a court's responsibility is to determine whether there are issues to be tried.  *Duse v. International Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir. 2001).  Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is 'material' for these purposes if it 'might affect the outcome of the

suit under the governing law.' ... An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that this case involves a claim of discrimination renders these general principles no less applicable. The Supreme Court has "reiterated that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *see Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988), "the salutary purposes of summary judgment–avoiding protracted, expensive and harassing trials–apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (observing that "[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion").

## II. Allegations not Contained in Plaintiff's Administrative Complaint

### A. Retaliation

As a threshold matter, defendant contends that the Court should disregard certain allegations that plaintiff makes in her moving papers that are not contained in, or contradict the allegations in, her administrative complaint that she filed with the New York State Division of Human Rights ("SDHR complaint") and the complaint in this action ("civil complaint"). In particular, defendant

contends that whereas the SDHR and civil complaints only allege that plaintiff complained to four individuals–General Manager Bill Kinney, Moscato, Manager Steve Corey and Carpenter, plaintiff now alleges that she also complained about sexual harassment to certain other high-ranking individuals at Barnard, including Mike Barnard and Comptroller Barb Furgeson.   Similarly, defendant asserts that plaintiff's interrogatory responses in this action allege that her harassers included Ledbetter and Moscato, who were not so identified in plaintiff's SDHR or civil complaint.

Defendant also notes that in her interrogatory responses in this action, plaintiff alleged that she was retaliated against by losing a job opportunity at Piehler, an allegation that is not found in either the SDHR or civil complaint.   In addition, whereas the civil complaint alleges that after plaintiff complained about Faro to Kinney, "Kinney reprimanded Faro and all sexual advances by Faro toward Plaintiff ceased," Complaint ¶ 13, plaintiff now alleges that after plaintiff complained to Kinney, "Kinney spoke to Faro and the behavior did stop for a short time," but that within a month Faro began touching plaintiff again, and that his offensive behavior toward plaintiff continued "periodically, for the entire time Plaintiff worked for Defendant ... ."   Dkt. #23 Ex. 13 at 14.

Plaintiff concedes that the allegations set forth in her motion papers are "more detailed" than those contained in her SDHR and civil complaints, *see* Plaintiff's Mem. of Law (Dkt. #37) at 3.   She contends, however, that there are legitimate explanations for this, and that the Court should not disregard this evidence.

In particular, with respect to the allegations about Kinney and Faro, plaintiff testified at her deposition that when she signed the SDHR complaint–which also alleges that "all sexual advances toward [plaintiff] by Rod Faro ended" after Kinney spoke to Faro about plaintiff's complaints about Faro, *see* Dkt. #23-3 ¶ 11–she "didn't realize the importance of every little detail," and that it was

only after she spoke to her attorney in this action that she realized "how important every little detail was." Dkt. #24-3 at 21.  Plaintiff also states that "Ms. Ribis may have erred in her complaint" when she said that Faro's touching of plaintiff stopped after Kinney reprimanded him, and that "through discovery it was unequivocally determined that this behavior [by Faro] obviously continued even after Bill Kinney had been fired."  Plaintiff's Mem. of Law (Dkt. #37) at 5-6.

These "new" allegations implicate two different principles.  The first, which applies to civil actions generally, is that "a memorandum of law is not a proper vehicle for rewriting or amending the complaint."  *Anderson v. Aset Corp.*, 329 F.Supp.2d 380, 383 (W.D.N.Y. 2004).  In other words, a plaintiff may not use a memorandum of law or similar paper to assert a claim that is not contained in the complaint.  *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment"); *Boyd v. Province Healthcare Co.*, No. Civ.A. 04-0825, 2005 WL 3132394, at *9 (S.D.Ala. Nov. 22, 2005) ("a retaliation claim cannot be soldered onto a Complaint through a summary judgment brief"); *Jones v. Southcorr, L.L.C.*, 324 F.Supp.2d 765, 774 n. 9 (M.D.N.C. 2004) (plaintiff cannot pursue claims of retaliation and non-payment of wages where such claims were not included in Equal Employment Opportunity Commission ("EEOC") charge or alleged in complaint); *Franz v. Five Rivers MetroParks*, 254 F.Supp.2d 753, 758-59 (S.D.Ohio 2002) (claim for relief not presented in complaint but raised for first time in opposition to summary judgment motion will not be recognized); *Church v. Maryland*, 180 F.Supp.2d 708, 732 (D.Md. 2002) (disregarding an allegation that was raised for the first time in plaintiff's affidavit in opposition to defendants' motion for summary judgment); *Marten v. Yellow Freight System, Inc.*, 993 F.Supp.

822, 829 (D.Kan. 1998) ("A claim not raised in the complaint and initially asserted in a response to a summary judgment motion is not properly before the court").

The second relevant principle is that of exhaustion of remedies. In general, a plaintiff may bring an employment discrimination action under Title VII only after filing a timely charge with the EEOC or with "a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e). Although "[e]xhaustion is ordinarily 'an essential element' of a Title VII claim," the Second Circuit has held that "[c]laims not raised in an [administrative] complaint ... may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. New York City Housing Authority*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001), and *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)).[2]

"A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge 'where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (quoting *Butts*, 990 F.2d at 1402). This exception to the exhaustion requirement "'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff

---

[2]Two other types of "reasonably related" claims–claims alleging retaliation by an employer against an employee for having filed an EEOC charge, and claims in which the plaintiff alleges further incidents of discrimination occurring after the filing of the EEOC charge, but "carried out in precisely the same manner alleged in the EEOC charge," *Butts*, 990 F.2d at 1402-03, are clearly not present here, since plaintiff did not file her administrative charge until after she left Barnard's employment.

claims she is suffering.'" *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Butts*, 990 F.2d at 1402).

In determining whether a claim is "reasonably related" to the allegations in the administrative complaint, "the focus should be 'on the factual allegations made in the [administrative] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Deravin*, 335 F.3d at 201 (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination [of the type alleged in the civil complaint].'" *Williams*, 458 F.3d at 70 (quoting *Deravin*, 335 F.3d at 202). *See also Alonzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 458 (S.D.N.Y. 1998) (stating that "it is the substance of the charge and not its label that controls") (quoted in *Deravin*, 335 F.3d at 201).

Applying these principles here, I conclude that to the extent that plaintiff is now attempting to assert a claim that she was retaliated against by losing her job offer from Piehler, she is barred from doing so, as such a claim is neither alleged in the civil complaint nor reasonably related to the allegations contained in plaintiff's SDHR complaint. The civil complaint simply asserts a claim under Title VII based on plaintiff's allegation of a hostile work environment, as a result of which "Plaintiff felt compelled to leave her employment with Defendant," Complaint ¶ 35, as well as state-law claims for intentional infliction of emotional distress and negligent supervision, none of which are premised upon any allegations of retaliation. Plaintiff cannot raise such a claim by way of interrogatory answers or in her motion papers. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985) (district court properly disregarded affidavits submitted by the plaintiffs in response to defendant's motion for summary judgment, where the affidavits

contradicted factual assertions made in the complaint about the scope of contracts at issue in the lawsuit; stating that "a party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding"); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F.Supp. 1342, 1359 (S.D.N.Y. 1997) ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint.  Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a dispositive motion").

Likewise, no retaliation claim is asserted in the SDHR complaint, nor is such a claim reasonably related to the allegations that are in that complaint.  The closest that plaintiff came in the SDHR complaint to alleging unlawful retaliation was her allegation that a coworker, Ginger Gehrig, was fired two days after Gehrig and plaintiff met with then-acting General Manager Barb Furgeson in early 2000 to complain about Faro's having "tongue kiss[ed]" Gehrig without her consent.  Dkt. #23 ¶¶ 14-18.  Plaintiff also alleged that, when she complained to Carpenter about his comments concerning plaintiff's breasts, and "threatened to take the matter up with Manager Frank Muscato [sic], Carpenter replied:  'Don't talk to Muscato, he's trying to fire you.'"  Dkt. #23 ¶ 30.[3]  Plaintiff has never alleged, however, that she *was* fired or that Moscato himself threatened to fire her.

The Second Circuit has recognized that "retaliation and discrimination represent very different theories of liability ... ."  *Williams*, 458 F.3d at 71 (internal quotes omitted).  The court has also cautioned that there is no "*per se* rule" about whether such claims may be considered "reasonably related" to each other, *id.*, and in fact, in *Williams* (in which the plaintiff's EEOC complaint had been marked as indicating "retaliation" as a basis for her charge of discrimination,

---

[3]It appears that "Moscato" is the correct spelling.  *See* Moscato Decl. (Dkt. #42).

but not "sex") the court found that the "specific factual allegations" in the plaintiff's EEOC complaint "put the EEOC on notice that, in addition to a retaliation claim, a gender discrimination claim may also exist ...," and that it was therefore error for the district court to dismiss the plaintiff's sex discrimination claim for failure to exhaust administrative remedies. *Id.* In particular, the court noted allegations that: an alleged sexual harasser had been reinstalled as the plaintiff's boss; she was the only woman in her station; she had previously alleged gender discrimination in state court; she was given an "impossible" assignment never given to men; and she was deprived of private changing facilities and given no option but to "change in the boiler room with [her] male co-workers." *Id.* The court cautioned, however, that its holding was based on "a unique set of facts" and that "[e]xhaustion is still a crucial component of Title VII cases, and we emphasize that our holding today in no way undermines that requirement." *Id.*

No such "specific factual allegations" exist in plaintiff's SDHR complaint in the case at bar. "While Title VII allows for loose pleadings before the EEOC and a complainant need not list every detail of her alleged discriminatory treatment, a charge of discrimination needs to provide sufficient specifics to afford the EEOC a reasonable opportunity to fulfill its obligations to investigate the complaint and attempt to mediate a resolution." *Briggs v. New York State Dep't of Transp.*, 233 F.Supp.2d 367, 376 (N.D.N.Y. 2002) (citing *Butts*, 990 F.2d at 1402-1403); *see also Cooper v. Xerox Corp.*, 994 F.Supp. 429, 432 (W.D.N.Y. 1998) ("Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably"). Plaintiff's SDHR complaint was devoid of such specifics. *Cf. Ausfeldt v. Runyon*, 950 F.Supp. 478, 486 (N.D.N.Y. 1997) (plaintiff's retaliation claim was reasonably related to sexual harassment allegations in her EEOC charge, which included allegations that plaintiff's supervisor had disciplined her for complaining to others about

his behavior, that he confronted her with "false charges based on hearsay," and that she feared that confronting him directly would "result in retaliations" [sic]).

Furthermore, as stated, the allowance for loose pleadings is based in part on the courts' recognition that administrative complaints "frequently are filled out by employees without benefit of counsel," *Deravin*, 335 F.3d at 201, but plaintiff testified at her deposition that she was represented by counsel at the time that she filed her SDHR complaint. *See* Dkt. #33 at 13-14; *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1112 (7th Cir. 1992) (noting that plaintiff "apparently was advised by her attorney even at the stage of filing her charge with the EEOC," and stating that "[t]herefore, it is not unreasonable to require some additional specificity or detail as a condition precedent for permitting her to assert her claim of racial harassment") (footnote omitted); *James v. Newsweek*, No. 96 Civ. 0393, 1999 WL 796173, at *8 (S.D.N.Y. Sept. 30, 1999) (dismissing plaintiff's sex- and disability-discrimination claims for lack of subject matter jurisdiction because plaintiff had not exhausted her administrative remedies as to those claims, and noting that "plaintiff was represented by counsel when she filed her [administrative charges]," which contained "absolutely no reference to any" such claims).

Plaintiff's allusions in her SDHR complaint to a coworker of plaintiff being fired after the *coworker* complained about sexual harassment, and to Carpenter's (unsuccessful) attempt to dissuade plaintiff from approaching Moscato with her complaints about Carpenter by telling plaintiff that Moscato was "trying to fire" her, without more, were simply not enough to alert the agency to any claim of retaliation. Indeed, plaintiff's SDHR charge suggested that her complaints to management led to some actions *favorable* to her; in particular, the SDHR complaint alleged–as does the civil complaint–that Faro's harassment of plaintiff stopped after Kinney spoke to him about

plaintiff's complaints, and that when plaintiff indicated her intention to quit because of Riley's behavior toward her, Moscato offered plaintiff a raise and a sales position if she would stay.  Dkt. #23 ¶¶ 11, 25.  *See Cooper*, 994 F.Supp. at 435 (stating that "[n]othing in these paragraphs [in the plaintiff's EEOC charge] suggests that Cooper thought he was being retaliated against or even provides any factual basis to infer an alleged retaliation").

## B. Allegations Concerning Additional Harassers, Incidents and Complaints

Most of plaintiff's other "new" allegations, however, do not amount to genuinely new "claims" that should have been asserted in the civil complaint, but are simply additional factual allegations in support of plaintiff's hostile work environment claim.  It is well established that a plaintiff need not plead evidence in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002); *Chesney v. Valley Stream Union Free School Dist. No. 24*, No. 05 Civ. 5106, 2006 WL 2713934, at *3 (E.D.N.Y. Sept. 22, 2006), and that the specific facts underlying a plaintiff's claim may be brought out during discovery.  *See Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) ("the [Federal] Rules ... rely on extensive discovery to flesh out the claims and issues in dispute"); *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) (noting that "the skeletal presentation in a notice pleading may be fleshed out later").

Most of these allegations are also reasonably related to the claim asserted in plaintiff's SDHR complaint, since they involve similar conduct, which occurred during the same time period, and in the same, relatively small workplace, as those alleged in her SDHR complaint.  These "new" allegations, then, simply amplify the allegations of the SDHR complaint, and are not barred.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177-78 (2d Cir. 2005) (plaintiff's claim of

retaliatory refusal to list plaintiff for potential hire by related company was reasonably related to EEOC complaint's other assertions of retaliatory conduct by employer which occurred around same time); *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (stating that "[j]udicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate," but that "[a]llegations of new acts of discrimination, offered as the *essential basis* for the requested judicial review are not appropriate") (emphasis added), *cert. denied*, 511 U.S. 1033 (1994).

In addition, while defendant suggests that plaintiff's allegations about additional harassers and complaints amounts to a material change in her story, they do not literally contradict the allegations in the SDHR complaint. The SDHR complaint alleged that certain Barnard employees harassed plaintiff, and that she complained to certain supervisors, but it does not state that those were the *only* individuals involved. *See Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004) (principle that a party cannot create a genuine issue of material fact by contradicting allegations contained in EEOC complaint is only triggered upon threshold determination of "contradiction," which only exists when statements are "inherently inconsistent").

Furthermore, both here and in her SDHR complaint, plaintiff has alleged not simply that she was the victim of discrete acts of discrimination, but that she was subjected to a hostile work environment. *See* SDHR Complaint (Dkt. #23) ¶ 35. To prevail on such a claim, a plaintiff must generally show discriminatory or intimidating conduct so "pervasive" that it created an abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (stating that "[i]solated incidents typically do not rise to the level of a hostile work environment," and that "[g]enerally, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive'")

(quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  While that does not mean that each

of the plaintiff's coworkers must have participated in such conduct, it does seem reasonable to think

that an administrative agency investigating such a claim would not approach it with an especially

narrow focus, but would take a broader view, looking at the employee's work *environment* during

the relevant period.[4]

Likewise, plaintiff's allegation that she complained to Mike Barnard, though not contained

in the SDHR complaint, is reasonably related to the matters that were raised in that complaint.  The

SDHR complaint alleged that plaintiff complained about sexual harassment to several individuals

in positions of authority at Barnard, including Kinney, Moscato and Corey.  Dkt. #23 ¶¶ 10, 24.  In

---

[4]I recognize that there is authority, at least from outside this circuit, that for the claims in a civil suit to be "reasonably related" to the allegations contained in the plaintiff's administrative charge, the "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994).  That rule, however, is more apt in cases involving administrative claims of disparate treatment, which by their nature are based on discrete acts of discrimination involving particular job actions, rather than on the "environment" in which the plaintiff worked.  Two separate incidents of disparate treatment might have nothing in common except that they involve the same plaintiff, whereas separate, yet similar acts by various coworkers and supervisors might all contribute to the plaintiff's hostile work environment.  *See, e.g., id.* at 500-03 (insurance salesperson's claim in her civil complaint that employer discriminated against her on account of her sex by transferring her to less lucrative sales route was not reasonably related to plaintiff's allegations in her EEOC charge that her manager had "intimidated" her and that she had been forced to pay for her client's insurance premiums); *Chacko v. Patuxent*, 429 F.3d 505, 511 (4th Cir. 2005) (plaintiff failed to exhaust administrative remedies with respect to claim of hostile work environment, since "the allegations of harassment in the [plaintiff's] administrative charges involved three specific acts at specific times.  None suggested the long-term harassment that Chacko sought to prove at trial"); *Freeman v. Oakland*, 291 F.3d 632, 637-38 (9th Cir. 2002) (allegations in plaintiff teacher's EEOC charge were not reasonably related to those in his civil complaint, since "[t]he factual allegations in Freeman's EEOC charge refer only to discriminatory conduct in relation to a specific election" for the faculty advisory council, and "[n]othing in the language of the charge itself would have resulted in an EEOC investigation encompassing alleged discrimination in the context of teaching assignments, class size, and the handling of the dispute over the eight-period work day, ... which surfaced for the first time in Freeman's First Amended Complaint" in his civil suit).

light of those allegations, and since Mike Barnard Chevrolet, Inc. was named as the respondent, it is reasonable to think that the agency would have looked into the general subject of whether and to whom plaintiff complained about the incidents alleged in the SDHR complaint.

This result is also consonant with the purposes of the Title VII exhaustion requirement, which are primarily twofold:

> [f]irst, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning.

*Chacko v. Patuxent*, 429 F.3d 505, 510 (4th Cir. 2005) (citations omitted). Second, the exhaustion requirement "give[s] the administrative agency the opportunity to investigate, mediate, and take remedial action," which may prompt voluntary compliance with Title VII by the employer. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (quoting *Stewart v. United States I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985)). *See also Chacko*, 429 F.3d at 510 ("Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved"); *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997) ("The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance"); *Hansen v. Danish Tourist Bd.*, 147 F.Supp.2d 142, 151 (E.D.N.Y 2001) ("The purpose of the exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance").

Plaintiff's "new" allegations are not so different from or inconsistent with those in her SDHR complaint that defendant could legitimately claim to have been caught unawares by them, or unfairly prejudiced by their assertion. Likewise, these allegations were reasonably related to those in the

SDHR complaint, which gave the agency an adequate opportunity to investigate, and attempt to conciliate, the claims.  The gist of plaintiff's claim is, at it has been throughout, that she was subjected to a hostile work environment as a result of the actions of a number of her coworkers and supervisors at Barnard, and that nothing was done in response to her complaints.[5]

## III. The Merits of Plaintiff's Title VII Claim

### A. Hostile Work Environment–General Standards

In order to prevail on a claim that sexual harassment created a hostile work environment in violation of Title VII, a plaintiff must establish two elements.  First, the plaintiff must show that her workplace was permeated with "discriminatory intimidation, ridicule, and insult ... that [wa]s sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris*, 510 U.S. at 21 (internal citations and punctuation omitted).  Second, she must show that a specific basis exists for imputing the conduct that created the hostile environment to her employer.  *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir.), *cert. denied*,

---

[5]One allegation in the SDHR and civil complaints–that "all sexual advances by Faro toward Plaintiff ceased" after Kinney talked to Faro–does seem to flatly contradict plaintiff's current assertion that Faro's offensive behavior soon resumed, and that it continued for the duration of plaintiff's employment at Barnard.  It is also curious that plaintiff contends that "through discovery it was unequivocally determined that [Faro's offensive] behavior obviously continued even after Bill Kinney had been fired." Plaintiff's Mem. of Law (Dkt. #37) at 5-6.  Plaintiff does not explain why *she* needed discovery to find out that Faro continued to harass her.

I find it unnecessary to decide at this point, however, whether the Court should, or properly could, consider plaintiff's allegation that Faro's behavior continued because, even without that allegation, plaintiff has presented enough evidence to withstand defendant's motion for summary judgment as to her hostile work environment claim.  Conversely, even if I were to consider this allegation, plaintiff's own motion for summary judgment would have to be denied, since issues of material fact would remain about whether plaintiff was subjected to a hostile work environment and whether Faro's actions should be imputed to Barnard.

540 U.S. 1016 (2003); *Alfano*, 294 F.3d at 373; *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

To meet the first requirement, the plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores*, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal punctuation omitted). The plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

In *Harris*, the Supreme Court set forth a non-exhaustive list of factors relevant to determining whether a given workplace is permeated with discrimination so "severe or pervasive" as to support a Title VII claim. These include:  (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance"; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted to the plaintiff.  *Harris*, 510 U.S. at 23.

The Second Circuit has instructed district courts to consider the totality of the circumstances in determining whether a plaintiff has submitted evidence sufficient to support a finding that a hostile work environment existed. *See Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citing *Harris*, 510 U.S. at 23). The factors outlined above must therefore be considered "cumulatively," so that the Court can "obtain a realistic view of the work environment." *Id.* (quoting *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 444 (7th Cir. 1994)). This includes evaluating the "quantity, frequency, and severity" of the incidents. *Id.*

With respect to the imputation requirement, the general rule is that "[w]hen harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Perry*, 115 F.3d at 149 (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir.), *cert. denied*, 512 U.S. 1213 (1994)); *accord Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000). In addition, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807. An employee is deemed to possess supervisory status if he has "the authority to affect the terms and conditions of the victim's employment." *Mack*, 326 F.3d at 126 (quoting *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027 (7th Cir. 1998)). The Second Circuit has stated that supervisory authority should not be narrowly defined as simply "the power to hire, fire, demote, promote, transfer, or discipline an employee." *Id.* at 126. Rather, the relevant question is whether "the authority given by the employer to the employee enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates." *Id.*

If a harassing supervisor takes a "tangible employment action such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," liability is automatically imputed to the employer. *Huaman v. American Airlines, Inc.*, No. 00 Civ. 6336, 2005 WL 2413189, at *2-3 (E.D.N.Y. Sept. 29, 2005) (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). If no tangible employment action was taken, a defending employer may raise an affirmative defense to liability or damages by showing "(a) that the employer exercised reasonable care to prevent and correct

promptly any ... harassing behavior, and (b) that the plaintiff employee failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.  The Second Circuit has cautioned that because the employer bears the burden of proving the *Faragher/Ellerth* defense, summary judgment on this issue should not be granted against unless "the evidence is so overwhelming that the jury could rationally reach no other result."  *Fairbrother v. Morrison*, 412 F.3d 39, 53 (2d Cir. 2005).

**B. Application to this Case**

Based on the evidence before me, I find that neither plaintiff nor defendant is entitled to summary judgment on plaintiff's hostile work environment claim.  The success or failure of this claim depends on the resolution of disputed issues of fact and credibility determinations, with are not appropriately made on a motion for summary judgment.

For purposes of its summary judgment motion, Barnard has conceded, or at least assumed, that plaintiff can establish the existence of genuine issues of material fact with respect to the first prong of her hostile work environment claim, *i.e.*, whether her workplace was so permeated with intimidating or abusive conduct that it altered the conditions of plaintiff's employment.  *See* Defendant's Mem. of Law (Dkt. #25) at 15.  Barnard also concedes, for purposes of its motion, that there are issues of fact about whether some of the alleged harassers, including Riley, Carpenter, and Moscato, were "supervisors" for purposes of hostile work environment analysis.  *See id.* at 17.

Defendant contends, however, that even if a hostile work environment existed, and even if some of plaintiff's supervisors were among the perpetrators, no basis exists for imputing their actions to Barnard.  Relying on the *Faragher/Ellerth* defense, defendant asserts that the undisputed

facts show that Barnard provided reasonable avenues for complaint, and that plaintiff failed to take advantage of the opportunities for corrective action that were available to her.  Defendant also contends that the evidence shows that when Barnard was made aware of any complaints of harassment, it took prompt and adequate remedial measures in response.[6]

I disagree.  For one thing, viewing the record in the light most favorable to plaintiff, there is evidence that she complained to a number of persons in supervisory positions at Barnard, including Mike Barnard himself, and that little or nothing was done to address plaintiff's complaints.[7]   As recited earlier, plaintiff alleges that when she complained, she generally got no response or was told in effect that the managers to whom she complained were not interested in dealing with her complaints.

In support of its motion, defendant relies heavily on the statement in the SDHR and civil complaints that "Kinney reprimanded Faro and all sexual advances by Faro toward Plaintiff ceased" after plaintiff complained to Kinney.  Leaving aside plaintiff's current assertion that this cessation of Faro's behavior was only temporary, and assuming that plaintiff is bound by the allegation in her complaint, *see Bellefonte Re Ins. Co.*, 757 F.2d at 528 (party cannot contradict its own pleading with

---

[6]As stated, the *Faragher/Ellerth* defense is only available in the absence of a "tangible employment action," which has not been alleged here.  Although plaintiff does appear to allege that she was constructively discharged (as discussed in more detail in Part IV, *infra*), a constructive discharge does not constitute a tangible employment action unless it was precipitated by "a supervisor's official act."  *Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir. 2004) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 140 (2004)).  No such act is alleged in this case.

[7]In support of its argument that Barnard's EEO and harassment policies provided plaintiff with a reasonable avenue of complaint, defendant states in its brief that "there are *numerous* examples where complaints were made (by Ribis and others) regarding alleged harassment."  Dkt. #25 at 16 (emphasis added).

affidavits), issues of fact exist that preclude the entry of summary judgment for defendant.  Indeed,

defendant's own argument that "it *strains credulity* to believe that Barnard Chevrolet had a

demonstrated history of swiftly and decisively addressing sexual harassment complaints (including

Ribis'), only to ignore numerous other alleged complaints," Dkt. #25 at 19 (emphasis added),

demonstrates the inappropriateness of granting summary judgment, as it is precisely the type of

argument that should be made to a jury at trial.[8]   *See Armbruster v. Unisys Corp.*, 32 F.3d 768, 777

(3d Cir. 1994) (in granting summary judgment for employer in employment discrimination case,

district court's finding that plaintiffs' theory of case "strain[ed] credulity" constituted inappropriate

credibility determination, since plaintiffs had pointed to evidence supporting their theory and it was

not inherently incredible), *abrogated on other grounds by Smith v. Borough of Wilkinsburg*, 147

F.3d 272, 277 (3d Cir. 1998).

Similarly, defendant notes that on two occasions after plaintiff left her employment at

Barnard, her physician, who was treating plaintiff for stress and depression, added some entries in

plaintiff's medical records indicating that plaintiff had reported being sexually harassed while she

was still at Barnard.  Defendant suggests that this was a transparent, after-the-fact attempt by

plaintiff, through her physician, to bolster her allegations in this lawsuit.  Like many of defendant's

---

[8]The case cited by defendant, *O'Dell v. Trans World Entertainment Corp.*, 153 F.Supp.2d 378, 389 (S.D.N.Y. 2001), is distinguishable.  In *O'Dell*, the undisputed evidence showed that the employer undertook an investigation of the plaintiff's complaints, and that she refused to cooperate with the investigation.  In holding that the plaintiff thereby unreasonably failed to take advantage of the employer's sexual harassment complaint procedures, the court noted that there was no evidence that the employer had ignored sexual harassment complaints by other employees.  *Id.* at 389-92.  The court did *not* hold–as defendant would have this Court hold–that simply because an employer responded to *one* of an employee's complaints, it would necessarily "strain credulity" for a factfinder to conclude that the employer ignored other complaints by that same employee.

arguments in this case, however, this raises issues of credibility that may be grist for cross-examination at trial, but that should not be resolved by the Court on a motion for summary judgment.  In short, this claim is rife with genuine issues of material fact.

For the same reasons, plaintiff's own motion for summary judgment must also be denied. Although plaintiff contends that the evidence conclusively shows that she was subjected to a hostile work environment and that defendant did not act on her complaints, there are obvious issues of credibility regarding the nature and extent of the sexually-oriented comments and behavior to which plaintiff was subjected at Barnard, the extent to which she complained about these matters and to whom, and what if any measures Barnard took in response.


## IV. Constructive Discharge

Both parties also move for summary judgment on plaintiff's constructive discharge claim. Although the Title VII cause of action itself does not allege that plaintiff was constructively discharged, *see* Complaint ¶¶ 36-47, plaintiff does assert in her factual allegations that "[a]s a result of the hostile work environment and sexually harassing comments and inappropriate activities, Plaintiff felt compelled to leave her employment with Defendant," Complaint ¶ 35, and both parties have addressed this as a separate cause of action.

At the outset, I note that there is some authority that "there is no *independent* cause of action for constructive discharge." *Russ v. Van Scoyoc Associates, Inc.*, 122 F.Supp.2d 29, 36 (D.D.C. 2000).  *See*, *e.g.*, *Knabe v. Boury Corp.*, 114 F.3d 407, 407 n. 1 (3rd Cir. 1997) (a "constructive discharge claim ... is not a separate ground for relief, but rather would factor into the damages"); *Fernandez v. City of Pataskala, Ohio*, No. 2:05-CV-75, 2006 WL 3257389, at *17 (S.D.Ohio Nov.

9, 2006) ("Constructive discharge is not itself a cause of action") (citing *Logan v. Denny's, Inc.*, 259

F.3d 558, 568 (6th Cir. 2001)); *Smith v. Akstein*, 408 F.Supp.2d 1309, 1323-24 n. 17 (N.D.Ga. 2005)

("This Court is not aware of, and the parties have not presented, any authority suggesting that

constructive discharge is a separate cause of action under federal law"); *see also Vitug v. Multistate*

*Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996) (where a plaintiff cannot demonstrate discrimination,

"his constructive discharge claim is doomed to failure"); *but see Petrosino v. Bell Atlantic*, 385 F.3d

210, 220 (2d Cir. 2004) (stating, in context of whether plaintiff's Title VII "termination claim ...

based on a single event, her alleged constructive discharge," was timely, that "[o]ther Title VII

claims, such as those for termination or failure to promote, are based on 'discrete acts,' each giving

rise to a separate cause of action").   At least on the facts before me, I do believe that plaintiff's

allegation that she "felt compelled to leave" Barnard is more properly viewed–as indeed, it appears

to be alleged in the complaint–as simply one aspect of her Title VII hostile work environment claim

than as a separate, independent cause of action.

To establish a constructive discharge, a plaintiff must show that "her employer deliberately

and discriminatorily created work conditions so intolerable that a reasonable person in the

employee's position would have felt compelled to resign." *Ferraro v. Kellwood Co.*, 440 F.3d 96,

101 (2d Cir. 2006) (internal quotation marks and citation omitted).  *See also Suders*, 542 U.S. at 134

("to establish 'constructive discharge,' the plaintiff ... must show that the abusive working

environment became so intolerable that her resignation qualified as a fitting response"); *Petrosino*,

385 F.3d at 231 (affirming summary judgment for employer on constructive discharge claim where

plaintiff had not proven that "quitting was the only way out of her ... dilemma"); *Whidbee*, 223 F.3d

at 73 ("To find that an employee's resignation amounted to a constructive discharge, the trier of fact

must be satisfied that the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign") (internal quotation marks and alteration omitted).   "Upon that showing, the employee's decision to resign 'is assimilated to a formal discharge for remedial purposes.'"   *Ferraro*, 440 F.3d at 101 (quoting *Suders*, 542 U.S. at 141).

Although I have my doubts about this claim, I will allow it to proceed, and I deny both parties' motions for summary judgment.   The fact that plaintiff has adduced enough evidence to support a finding that she was subjected to a hostile work environment does not automatically mean that she can also show a reasonable person in her position would have felt compelled to resign.   *See Petrosino*, 385 F.3d at 230 (although a reasonable jury could find that throughout her employment, plaintiff "experienced a work environment that employees and supervisors made deliberately hostile to women," the record would not support a finding "that this conduct compelled her resignation").   Viewing the evidence in the light most favorable to plaintiff, however, a jury could find that she was subjected to frequent, almost unrelenting, explicit and offensive sexual comments over a period of years, as well as unwanted touching of a sexual nature.   A jury could also conclude that plaintiff's supervisors not only ignored her complaints, but that some of them participated in the offensive activity.   Whether this would have led an objectively reasonable employee in plaintiff's situation to have resigned is therefore better left for the trier of fact in this case.   *See Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) (finding that plaintiff had "presented sufficient evidence to allow a reasonable fact-finder to conclude that a reasonable person in Terry's position would have felt compelled to terminate his employment," including evidence that plaintiff "was experiencing a hostile work environment which involved pervasive, unabated harassment by his supervisors");

*Martinez v. Cole Sewell Corp.*, 233 F.Supp.2d 1097, 1140-41 (N.D.Iowa 2002) (denying employer's motion for summary judgment on constructive discharge claim, where plaintiff had "generated genuine issues of material fact that she was subjected to such frequent, gross, and offensive epithets concerning her Mexican origin as to make her workplace intolerable").[9]

## V. State-Law Claims

### A. Intentional Infliction of Emotional Distress

Plaintiff's second cause of action alleges that Barnard, through the acts of its employees and by failing to protect plaintiff from those acts, intentionally caused plaintiff to suffer emotional distress. Defendant contends that this claim should be dismissed both on the merits and on the ground that it is time-barred.

In New York, the statute of limitations on such a claim is one year. *See* N.Y. C.P.L.R. § 215(3). In the case at bar, plaintiff alleges that as a result of her emotional distress, she was compelled to resign from her employment on September 30, 2002. *See* Dkt. #23 ¶ 35. She did not file the complaint in this action until over one year later, however, on October 7, 2003. Absent some basis to toll the limitations period, this claim is thus time-barred. *See Stordeur v. Computer Associates Intern., Inc.*, 995 F.Supp. 94, 98, 102 (E.D.N.Y. 1998) (plaintiff's claim for intentional infliction of emotional distress was time-barred, since "plaintiff resigned in March 1995 and initiated suit on September 24, 1996, exceeding the one year period" of C.P.L.R. § 215(3)).

---

[9]In any event, since plaintiff's hostile work environment claim survives defendant's motion for summary judgment, I see no prejudice to defendant in allowing her constructive discharge claim to proceed as well. Discovery is closed, and trying the constructive discharge claim would not seem to require much additional proof or otherwise appreciably lengthen a trial in this case.

In opposition to defendant's motion, plaintiff urges the Court to hold that the limitations period on this claim was tolled during the pendency of her SDHR complaint.  I decline to do so.  The prevailing view within this circuit is that "state common law claims are not tolled during the pendency of an NYSDHR or EEOC claim."  *Smalls v. Allstate Ins. Co.*, 396 F.Supp.2d 364, 375 (S.D.N.Y. 2005) (holding that "because Plaintiff's common law intentional infliction of emotional distress claim was not tolled during the pendency of the NYSDHR proceeding, it is time-barred") (quoting *Duran v. Jamaica Hosp.*, 216 F.Supp.2d 63, 68 (E.D.N.Y. 2002)); *accord Osorio v. Source Enterprises, Inc.*, No. 05 Civ. 10029, 2006 WL 2548425, at *3 (S.D.N.Y. Sept. 5, 2006) ("Contrary to plaintiffs' argument, an EEOC charge does not toll the time for state law claims arising from the same events"); *Stordeur v. Computer Associates Intern., Inc.*, 995 F.Supp. 94, 101-02 (E.D.N.Y. 1998) (statute of limitations for former employee's intentional tort claims under New York law, arising from alleged sexual harassment, was not tolled by pendency of her Title VII claim before EEOC); *Katt v. The New York City Police Dep't*, 95 Civ. 8283, 1996 U.S. Dist. LEXIS 19400, *8, (S.D.N.Y. Dec. 30, 1996) (limitations period on plaintiff's state common law tort claims was not tolled during pendency of EEOC charge); *Lamb v. Citibank, N.A.*, 93 Civ. 2358, 1994 U.S. Dist. LEXIS 12903, *23-*24 (S.D.N.Y. Sept. 9, 1994) (filing EEOC and state human rights charge did not toll plaintiff's intentional infliction of emotional distress claim), *aff'd*, 1995 U.S.App. LEXIS 28868 (2d Cir.), *cert. denied*, 517 U.S. 1188 (1995).  Accordingly, plaintiff's claim for intentional infliction of emotional distress is time-barred by the one-year statute of limitations under C.P.L.R. § 215(3).[10]

---

[10]My finding in this regard renders it unnecessary for the Court to consider whether defendant is entitled to summary judgment on the merits of this claim.

**B. Negligent Supervision**

Plaintiff's third cause of action alleges that Barnard was negligent by failing to adequately supervise its employees, and by failing to protect plaintiff from its employees' harassment of her. Defendant moves for summary judgment on this claim on the ground that it is barred by the exclusivity provision of the New York Workers' Compensation Law.

I agree.  Section 29(6) of the Workers' Compensation Law provides that "[t]he right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee ... when such employee is injured ... by the negligence or wrong of another in the same employ ... (while acting within the scope of his or her employment)."  This provision has been held to bar negligent-supervision claims against an employer arising out of coworkers' sexual harassment of the plaintiff. *See, e.g.*, *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir.) (plaintiff's common law negligence claim, based on employer's failure to supervise plaintiff's supervisor and to prevent the establishment of a hostile working environment, was barred by § 29(6)), *cert. denied*, 522 U.S. 997 (1997); *Pellei v. International Planned Parenthood Fed./Western Hemisphere Region, Inc.*, No. 96 CIV. 7014, 1999 WL 787753, at *13 (S.D.N.Y. Sept. 30, 1999); *Ross v. Mitsui Fudosan, Inc.*, 2 F.Supp.2d 522, 533 (S.D.N.Y. 1998); *Silberstein v. Advance Magazine Publishers, Inc.*, 988 F.Supp. 391, 394-95 (S.D.N.Y. 1997); *see also Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) (exclusive remedy provisions of N.Y. Workers' Comp. L. precluded female flight attendant's state-law claims against airline for negligent retention and supervision of male flight attendant who allegedly raped her in his hotel room during a brief layover in a foreign country), *cert. denied*, 537 U.S. 824 (2002).  Although plaintiff argues that this exclusivity provision should not apply to harassment perpetrated by supervisors (as opposed to coworkers), she has cited no authority to that

effect, and I find her argument unconvincing.  By its terms, the statute applies to injuries caused "by the negligence or wrong of another in the same employ" as the victim, which necessarily includes supervisors as well as coworkers.  *See Stordeur*, 995 F.Supp. at 102-03 (former employee's claims against employer, arising out of alleged sexual harassment by supervisor, for negligent hiring, supervision, and investigation were barred by exclusivity provision of N.Y. Workers' Comp. L.).

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #19) is granted in part and denied in part. Plaintiff's second and third causes of action are dismissed.  Plaintiff's first cause of action is also dismissed insofar as it asserts a claim for unlawful retaliation under Title VII.  In all other respects, defendant's motion is denied.

Plaintiff's motion for summary judgment (Dkt. #28) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 8, 2007.